[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Joseph Bieluch, Jr., commenced this action by writ, summons and complaint dated April 4, 1991, against nine individual residents of the Town of New Hartford, Connecticut. In the plaintiff's second amended complaint, dated October 29, 1991, count one alleges that the individual defendants committed the tortious act of libel. This claim is based on a letter of complaint signed by the defendants which was directed to Bernard Sullivan, then the Commissioner of Public Safety for the State of Connecticut. Count two of the plaintiff's second amended complaint alleges intentional infliction of emotional harm.
On December 7, 1992 defendant Maureen Kempa filed a motion to the court seeking permission to file a summary judgment motion. The defendant also filed a motion for summary judgment and attached thereto a supporting memorandum, affidavits and other evidence. On January 19, 1993 the plaintiff filed a memorandum in opposition to defendant's motion. The CT Page 5135 following facts are pertinent to the determination of this motion.
At the time of the alleged defamation, the plaintiff lived and was a resident state trooper in the Town of New Hartford. On or about July 2, 1990 Bernard Sullivan, then the Commissioner of Public Safety for the State of Connecticut, received a letter signed by nine residents of New Hartford, the defendants in this action. This letter expressed concern over what the defendants believed to be a conflict of interest between the plaintiff's extensive political activities within the Town of New Hartford and his role as resident state trooper. The letter was drafted by defendant Cronauer after consulting with Attorney Andrew Russell of the Department of Labor Relations of the State Police, who informed defendant Cronauer that it was the policy of the Department of Public Safety that complaints regarding the conduct of state troopers must be submitted to the Commissioner in writing, and therefore suggested that defendant Cronauer put her concerns in a letter addressed to the Commissioner. In the letter defendant Cronauer expressed the concern of many members of the community that the plaintiff's role as president of a political action committee conflicted with his obligations as resident state trooper. Specifically, the letter questioned the plaintiff's conduct in (1) making numerous public statements concerning his opposition to the new school plan; (2) publicly denigrating the organization of a forum for the purpose of expressing all sides of the new school issue; (3) parking his patrol car conspicuously at the polls during the referenda votes; (4) personally circulating a petition to repeat the school referendum; (5) exaggerating and distorting facts in public mailings; (6) conducting the business of his political action committee from his office in town hall while on duty; and (7) the concern that many residents feared retaliation, harassment or unequal law enforcement protection if they were to speak out against the plaintiff's political positions.
Upon receipt of this letter, Commissioner Sullivan referred the letter to Lieutenant Colonel John Watson, who in turn consulted with Attorney Russell of the department's labor relations unit, after an investigation of the matter. Commissioner Sullivan decided that it was in the best interests of the plaintiff and the Town of New Hartford that the plaintiff be transferred out of New Hartford to the Troop L barracks in Litchfield, Connecticut. At the time the plaintiff was notified of his transfer, his supervisors told him that the transfer was not for disciplinary reasons and that he had been doing a good job as the resident state trooper in New Hartford.
Summary judgment is provided for in Practice Book 378-384, and is a means of eliminating the "delay and expense of litigating an issue when there is no real issue to be tried." Wilson v. New Haven, 213 Conn. 277, CT Page 5136 279, 567 A.2d 829 (1980). Summary judgment "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699 (1990) (quoting Practice Book 384). "`Mere assertions of fact . . . are insufficient to establish existence of a material fact and, therefore, cannot refute evidence properly presented to the court under [Practice Book] 380.'" Burns v. Hartford Hosp., 192 Conn. 451, 455, 472 A.2d 1257 (1984). The trial court, in ruling on a motion for summary judgment, must "view the evidence in the light most favorable to the nonmoving party." Connell v. Colwell, 214 Conn. 242, 246-47,571 A.2d 116 (1990).
Defendant Kempa contends that her statements, challenged in this action are absolutely privileged because the complaint letter submitted to the Commissioner of Public Safety followed the procedure as set forth by the Commissioner. The plaintiff on the other hand argues that the letter that was submitted by the defendant to Commissioner Sullivan is not absolutely privileged because the letter was not submitted during or in furtherance of a quasi-judicial proceeding. Specifically, the plaintiff contends that because the Commissioner did not hold an actual on the record hearing regarding the allegations in the defendants complaint letter. the letter was not submitted in furtherance of a quasi-judicial proceeding.
In an action for libel the defendant must have made an unprivileged publication of a false and defamatory statement. Strada v. Connecticut Newspapers Inc., 193 Conn. 313, 316, 477 A.2d 1005 (1984), citing Letter Carriers v. Austin, 418 U.S. 264, 284, 94 S.Ct. 2770, 41 L.Ed.2d 745
(1974). It has been a well settled common law rule that "`communications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy.'" (Citations omitted.) Petyan v. Ellis, 200 Conn. 243, 245-46,510 A.2d 1337 (1986).
"`[L]ike the privilege which is generally applied to pertinent statements made in formal judicial proceedings, an absolute privilege also attaches to relevant statements made during administrative proceedings which are "quasi-judicial" in nature.'" Petyan v. Ellis, supra at 246-47. Moreover, the "`privilege extends to every step of the proceeding until final disposition, Petyan v. Ellis, supra, 246; including preparation of that proceeding." Chester v. Herbert W. Willey, Jr.,4 Conn. L. Rptr. 205
(July 1, 1991, Hennessey, J.). Thus, this rule applies whether or not the complaint resulted in later formal hearings. See Sinnett v. Albert,188 Neb. 170, 195 N.W.2d 506, 509 (1972). CT Page 5137
This absolute privilege for the publication of defamatory statements to an administrative board acting in a quasi-judicial capacity "must be limited to those statements made in connection with those activities of the agency that are judicial or quasi-judicial" and does not extend to statements which are unrelated to such agency's quasi-judicial authority. MacDonald v. Atlantic Airlines, 5 Conn. L. Rptr. 150, 151 (November 11, 1991, Berdon. J.); see also Petyan v. Ellis, supra, 246. "The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." (Citations omitted) Id. "`The policy underlying the privilege is that in certain situations the public interest in having people freely speak outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements.'" (Citations omitted) Id.
The first issue this court must address is whether the proceedings in this case were quasi-judicial in nature. If the proceedings were quasi-judicial in nature then the absolute immunity attaches and the defendants cannot be held liable for any alleged defamatory statements. The phrase "quasi-judicial proceedings" has been given a broad interpretation by the Connecticut Supreme Court. The judicial proceedings to which absolute immunity attaches include not only hearings before tribunals which perform a judicial function, but also extend "to proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial, in character." Kelley v. Bonney, 221 Conn. 549,566 (1992). (Citations omitted) In determining whether a proceeding is quasi-judicial in nature, the court in Kelley v. Bonney, supra, determined that courts should consider a number of factors, including whether the governmental entity in question has the power to: (1) exercise judgment and discretion; (2) hear and determine or to ascertain facts and decide; (3) making binding orders and judgments; (4) affect the personal or property rights of private persons; (5) examine witnesses and hear the litigation of the issues on a hearing; and (6) enforce decisions or impose penalties. Kelley v. Bonney, supra, 567, citing Thomas v. Petrulis,125 Ill. App.3d 415, 419-20, 465 N.E.2d 1059 (1984). In addition to the above factors, it is equally as important to consider "whether there is a sound public policy reason for permitting complete freedom of expression that a grant of absolute immunity provides." Kelley v. Bonney, supra, 567.
General Statutes 29-2 provides in pertinent part:
 Said Commissioner shall prescribe rules for the government of the division and, in any investigation made by him relating to the personnel of the division, may administer oaths and summon witnesses and compel their attendance CT Page 5138 as provided by law for the attendance of witnesses at court.
General Statutes 29-2.
In addition to the provisions of General Statutes 29-2, the Commissioner of Public Safety is vested with the authority to conduct quasi judicial proceedings in accordance with 29-2-5 of the Regulations of the Department of Public Safety, which provide:
 (a) Hearings in contested cases shall be presided over by the commissioner or his designated hearing officer.
 (b) Said commissioner or hearing officer shall have the power to: (1) Regulate the course of the hearing and to the conduct of the parties and their counsel therein; (2) insure that all testimony is given under oath; (3) rule upon offers of proof and receive evidence; (4) consider and rule upon all motions; and (5) require any additional written and oral/or oral argument.
 (c) Each party in an adjudicative hearing shall have the right to present evidence, cross-examine witnesses, enter motions and objections and assert all other rights essential to a fair hearing.
 (d) Intervention by interested parties shall be permitted in any contested case, as provided by applicable statute or otherwise within the discretion of the commissioner or hearing officer.
Regulations of the Department of Public Safety 29-2-5.
Thus, the Commissioner of Public Safety is vested with the discretion and judgment necessary to make personnel-related decisions, to hear and determine or to ascertain facts and decide issues pertaining to personnel. Additionally, the Commissioner is empowered to make binding orders and judgments, to examine witnesses and hear the litigation of personnel issues on a hearing, and also enforce decisions or impose penalties. See General Statutes 29-2; Regulations of the Department of Public Safety 29-2-5.
Moreover, the affidavits of Attorney Russell and Commissioner Sullivan establish that it was the policy of the Department of Public Safety that citizen complaints be submitted to the department in writing. CT Page 5139 Pursuant to this policy, Attorney Russell advised defendant Cronauer that the department could not investigate any of the conduct of the plaintiff unless a letter of complaint was filed with the Commissioner of Public Safety. Therefore, when the defendants submitted the subject letter to the Commissioner they were following department policy and thus, was the first step in initiating an investigation in accordance with the powers vested in the Commissioner of Public Safety. See General Statutes 29-2; Regulations of the Department of Public Safety 29-2-5.
The argument set forth by the plaintiff that the letter was not submitted during or in furtherance of a quasi-judicial proceedings because the Commissioner did not hold an actual on the record hearing, regarding the allegations in the defendants complaint letter is without merit. The fact that the letter written by the defendants to the Commissioner of Public Safety did not eventuate in a formal hearing before the Commissioner does not preclude the application of the rule of absolute privilege. The privilege extends to pleadings and other papers made part of a judicial or quasi-judicial proceeding even though such proceeding is in its preliminary state and no formal judicial action has been taken. See Petyan v. Ellis, supra, 246; Chester v. Herbert W. Willey, Jr., supra; Sinnett v. Albert, 188 Neb. 170, 195 N.W.2d 506, 509 (1972).
"The common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to the controversy." Petyan v. Ellis, supra, 251, citing Prosser Keeton, Torts (5th Ed.) 114, p. 817. Thus, it applies to statements made in pleadings or other documents prepared in connection with a court proceeding. Id.
The letter in this case containing the alleged defamatory statement relied upon by the plaintiff serves the same function in the administrative proceeding before the Commissioner of Public Safety as that of pleadings and similar documents in court proceedings. The defendant therefore should be accorded the same absolute privilege whether she testifies in person or submits in writing her testimony at the request of the administrative agency. Therefore, since the defendants letter had set in motion the trial procedure, and if the defendants had been called to testify as witnesses, the quasi-judicial character of the proceeding warrants the application of the rule of absolute privilege. See Kelley v. Bonney, supra; Petyan v. Ellis, supra, 252.
There is also sound public policy reasons for granting absolute immunity to individuals who express to the Commissioner of Public Safety their concerns regarding the performance of a state trooper. A police CT Page 5140 officer appears to the public to have substantial responsibility for or control over the conduct of government affairs. Our society vests its law enforcement officers with formidable power, the abuse of which is often extremely detrimental to the public interest. Citizen complaints of such abuses, and the administrative procedure which has been developed to investigate these complaints serve a public function of vital importance by providing a mechanism through which complaints may be reported to the proper authorities.
In the case at bar, the defendants were representatives of a class of individuals within the Town of New Hartford who were engaged in a bitter dispute with fellow townspeople over certain political issues. Of particular and immediate concern to both the defendants and Commissioner Sullivan was the fact that the plaintiff, the resident state trooper who is responsible for law enforcement protection in the Town of New Hartford twenty-four hours a day, publicly castigated several of the defendants, brought suit against the first selectman, personally circulated a petition among the townspeople regarding the bitterly contested school funding referendum, and otherwise publicly identified himself with one side of the school funding issue. These factors along with the policy of the Commissioner of Public Safety to conduct investigations only upon receipt of written letters of complaint, investigation of the concerns of the defendants would never have been conducted by the Department of Public Safety had the subject letter not been written and sent to the Commissioner of Public Safety. Thus, there is a sound public policy reason for permitting the complete freedom of expression that a grant of absolute immunity would provide to individuals concerned about the performance of those persons directly charged with the responsibility of providing law enforcement protection to them. To hold otherwise would chill the comment of citizens over the conduct of the state police and would impair the ability of the Commissioner of Public Safety to investigate the concerns of town selectmen and citizens arising from the conduct of state troopers.
The viability of a democratic government requires that the channels of communication between citizens and their public officials remain open and unimpeded. Were complaints such as this one not absolutely privileged, the possibility of incurring the costs and inconvenience associated with defending suit might well deter citizens with legitimate complaints from filing complaints. This court therefore concludes that the possible harm a false complaint may cause to a law enforcement officer's reputation, despite the procedural safeguards provided by General Statutes 29-2, and the Regulations of the Department of Public Safety 29-2-5, is outweighed by the public's interest in encouraging the filing and investigation of valid complaints. CT Page 5141
This court is not unmindful of the deeply disturbing and demoralizing effect false accusations may have on a law enforcement officer. No one likes to hear, or have his family and friends hear such allegations. It is regrettable that this holding here will, in some instances, afford an immunity to the evil disposed and malignant slanderer. This court is satisfied, however, that the inhibition of citizens' criticism of those entrusted with their protection is a far worse evil. Accordingly, this court holds that a citizen's complaint filed against a law enforcement officer is protected by the absolute privilege.
The next issue this court must address is, if the defendants alleged libelous statements in the letter of complaint submitted to the Commissioner of Public Safety are absolutely privileged is the plaintiff still entitled to damages for intentional infliction of emotional distress?
This state has recognized the tort of intentional infliction of emotional distress. See Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337
(1986). In order to prevail upon a claim for intentional infliction of emotional distress, the plaintiff must establish: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis, supra.
A party who makes a statement in a complaint letter that is absolutely privileged is not liable for the tort of intentional infliction of emotional distress. See Petyan v. Ellis, supra, 254. The rationale behind this rule is that the party is exercising a legal right in a permissible fashion and therefore cannot be held liable for the tort of intentional infliction of emotional distress.
Therefore, regardless of how the defendants conduct is categorized, since the defendants statements made in the letter of complaint were absolutely privileged the defendants could not be liable for the intentional infliction of emotional distress.
Accordingly, for the foregoing reasons, defendant Kempa's motion for summary judgment is granted.
PICKETT, J. CT Page 5142